# ROSH Construction, Inc.

103 Norman Rd · Suite B, Pasadena, MD 21122

(410) 360-7500

FAX (410) 360-7579

RECEIVED NOV 18 2002

November 15, 2002

Mark McGaughan
AMEC
7101 Wisconsin Avenue, #1403
Bethesda, MD 20814

RE: USCS / ICC Project

Dear Mark:

Enclosed is our March 18, 2002 letter, with attachments, regarding our delay / acceleration claim on the above project. Please reference as well previous correspondence from ROSH to AMEC dated April 12, 2002 and April 19, 2002 regarding this same subject. Our claim and information therein remains valid.

I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the Contractor.

If you have any questions, please do not hesitate to call.

Sincerely,
**ROSH Construction, Inc.**

Ron Shapiro, P.E.
President

RS/wdk

enclosures

cc: Joel Rubenstein

# ROSH Construction, Inc.

103 Norman Rd. Suite B, Pasadena, MD 21122

(410) 360-7500

FAX (410) 360-7979

March 18, 2002

Mark McGaughan
AMEC
7101 Wisconsin Avenue, #1403
Bethesda, MD 20814

RE:   USCS/ICC Project - Delay/Acceleration Directive

Dear Mark:

As you know from our many conversations and correspondences over the past year, ROSH has complied with AMEC's acceleration directive. We have worked our manpower overtime, we have increased manpower, we have added supervision, and as a result together with the start / stop nature of the work, there were inefficiencies which we suffered, all of which lead to the following additional costs:

- **Overtime**
  In accordance with your acceleration directive dated January 5, 2001, we put our crew on working a minimum of a 48 hour work week. This included 10 hour days and Saturdays and an occasional Sunday. Also during the course of the project, you issued several specific directions as to what areas and when to work overtime. As you can see from the attached chart showing our weekly manpower in man hours for the year 2001, there was a significant amount of overtime expended, particularly in the first half of the year. As no overtime was anticipated on this project, all of the costs associated with this overtime are a direct consequence of your directive.

  The costs of this overtime is $129,600 computed by multiplying the 1,440 hours of overtime worked times the previously established overtime rate.

- **Added Supervision**
  Also in accordance with your direction of January 5, 2001 and subsequent directives from you, we increased our manpower significantly. Please refer to our chart showing the labor costs incurred over the course of the project on an annual basis. As you can see, there was a dramatic increase in 2001 over any of the previous years. A normal distribution of manpower would be in the form of a bell curve. As a result of this added manpower, the workload became more than one supervisor could handle and we had to add an additional non working supervisor, the cost of which certainly was not anticipated in the original subcontract and results directly from your directives.

  The cost of this additional supervision is $120,000 based on 2,000 hours for one year times the previously agreed to regular rate.

ROSH Construction, Inc.

Mark McGaughan
Morse Diesel International
re USCS/ICC Project

March 18 2002
page 2

- **Inefficiency**

  As a result of having to hire many more workers at one time and trying to control them and work in many different areas concurrently, significant inefficiencies were experienced. Also, as you can see from our weekly manpower chart, the total number of man hours worked per week fluctuated and there were many spikes and valleys due to having to proceed in certain areas and then having to stop and cut back so other trades could do their work, perhaps work in areas out of sequence, and such.

  As a basis of measurement, we used a comparison of the ratio of the costs for CC#3 work which was primarily done in 2001 compared to the costs of CC#2 work, the majority of which was done prior to 2001 and found there to be a 19% increase. By multiplying the regular hourly rate times the total hours for 2001, less the overtime hours and less the supervisor's hours which yields a net effected number of hours being 19,680, results in a cost of inefficiency of $224,352.

Accordingly, please consider the foregoing as our claim for additional compensation due to disruption, acceleration, and inefficiencies. The total amount claimed is $473,952.00.

Enclosed for your use and reference are two color copies of charts labeled ROSH Construction, Inc., ICC/CW/USCS Labor Costs and ROSH Construction, Inc., ICC/CW/USCS Weekly Manpower for 2001.

For your ready reference, we have enclosed a copy of our March 7, 2001, letter to you which remains applicable.

We would appreciate being advised concerning when the overall claim has been completed, and we would like to receive a copy of same. We further request the opportunity to participate in all settlement meetings pertaining to ROSH's portion of the overall claim as well as any settlement meetings dealing with "global settlement." We specifically ask that our claim not be compromised or settled without our express authorization. We look forward to a prompt resolution of this matter so we can be reimbursed for costs which have already been incurred.

Sincerely,
**ROSH Construction, Inc.**

Ron Shapiro, P.E.
President

RS/wdk



ROSH Construction, Inc.
ICC/CW/USCS labor costs



ROSH Construction, Inc.
ICC/CW/USCS weekly manpower for 2001

March 7, 2001

**Mark McGaughan**
AMEC
USCS / ICC Project
7101 Wisconsin Ave., #1403
Bethesda, MD 20814

RE: Fax dated February 15, 2001

Dear Mark:

Confirming my prior letters dated January 25, 2001, February 14, 2001, and February 15, 2001, this is to reiterate that the delays, impacts, disruption and resultant directed accelerations are not due to any action, inaction, or performance failure by ROSH, but rather were caused by other parties. In short, the delays, impacts, and disruptions have been caused by unforeseeable causes beyond the control and without the fault or negligence of ROSH.

I understand that it is your position that the government is responsible for the increased costs which ROSH is experiencing and will continue to experience, including, but not limited to, overtime costs and loss of productivity associated with the acceleration effort. In accordance with the Subcontract Paragraphs 8(d) and 11(a) ROSH will pursue recovery for its claim on a pass-through basis.

We are of course hopeful that this matter can be fully resolved on this basis, but believe it is only fair to advise you that ROSH is entitled to full compensation for the costs which will be submitted. Therefore, in accordance with Paragraph 11(a) and 11(d), to the extent that such recovery is denied by the owner, ROSH will have no choice but to look to you and/or your surety for recovery. In that regard, please note that our letter of January 25, 2001 fully complies with the 11(b) notice requirement with respect to all additional costs incurred and to be incurred as a result of your acceleration directive. This letter and my letters of February 14, 2001 and February 15, 2001, though not required, constitute additional and continuing notice of our claim.

Sincerely,
**ROSH Construction, Inc.**


Ron Shapiro, P.E.
President