# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROSH CONSTRUCTION, INC.　　　　） | |
| 103 Norman Road, Suite B　　　　） | |
| Pasadena, Maryland  21122　　　　） | |
| 　　　　　　　　　　　　　　　） | |
| 　　　　Plaintiff,　　　　　　　） | |
| 　　　　　　　　　　　　　　　） | Civil Action No.:  1:07-cv-00876-HHK |
| v.　　　　　　　　　　　　　　） | |
| 　　　　　　　　　　　　　　　） | |
| AMEC CONSTRUCTION　　　　　） | |
| MANAGEMENT, INC.　　　　　　） | |
| 2200 Fletcher Avenue　　　　　　） | |
| Fort Lee, New Jersey  07024　　　） | |
| 　　　　　　　　　　　　　　　） | |
| 　　　　Defendant.　　　　　　　） | |
| 　　　　　　　　　　　　　　　） | |
| _____） | |

## DEFENDANT AMEC CONSTRUCTION MANAGEMENT, INC.'S MOTION TO DISMISS COUNTS I, III AND IV OF PLAINTIFF ROSH CONSTRUCTION, INC.'S COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant, AMEC Construction Management, Inc. ("AMEC"), by and through counsel, respectfully submits its motion to dismiss Counts I, III and IV of Plaintiff, Rosh Construction, Inc.'s ("Rosh"), Complaint, dated June 14, 2007, for failure to state claims upon which relief can be granted.[1]  Pursuant to Local Rule 78.1, AMEC respectfully requests an oral hearing on this motion.

---

[1] In the interest of judicial economy, AMEC submits this Fed R. Civ. P Rule 12(b)(6) motion to dismiss because all of the counts in Rosh's Complaint have been resolved by a settlement agreement between AMEC and Rosh (*See* Complaint, Ex. C; *see also* Complaint, Ex. C, Ex. A, attached thereto).  Paragraphs 11 and 14 of the Joint Prosecution Agreement between Rosh and AMEC expressly incorporate the parties' Subcontract including that agreement's dispute resolution procedures.  The Subcontract contains an agreement to arbitrate disputes between Rosh and AMEC.  In filing the instant motion, AMEC reserves its right to have this case resolved in arbitration in accordance with the parties' agreement, and this motion should not be taken as AMEC's consent to this court's jurisdiction.  *See Khan v. Parsons Global Serv., Ltd.*, 480 F. Supp. 2d 327, 333 (D.D.C. 2007)(holding that a 12(b)(6) motion to dismiss does not constitute active participation in a lawsuit sufficient to waive the moving party's right to arbitrate).

This case arises out of a U.S Federal Government Contract executed between the United States General Services Administration ("GSA") and AMEC[2] for the renovation of the ICC/USCS/CW Buildings Modernization in Washington, D.C. (the "Project").  Subsequently, AMEC and Rosh entered into a Subcontract whereby Rosh agreed to provide and install door frames, doors, door hardware and other work on the Project.

As a result of GSA changes to the Project and GSA caused delays and acceleration, AMEC, and many of AMEC's subcontractors, brought claims against GSA seeking additional monies and the remission of liquidated damages assessed by GSA against AMEC and the subcontractors.  Rosh submitted claims to AMEC for submission to GSA, which included Rosh's direct cost claims, a delay and acceleration claim, as well as a claim for remission of liquidated damages assessed by the GSA.  All of Rosh's claims were resolved in a settlement agreement between AMEC, on behalf of Rosh, and GSA.

This motion is made on the grounds that the operative Settlement Agreement and Joint Prosecution Agreement, both executed by AMEC and Rosh, and a Settlement Agreement entered into by GSA and AMEC, and the attached Schedule A payment allocation thereto, to which Rosh is bound, govern all aspects of Rosh's claims asserted in Rosh's Complaint, Counts I, III and IV.[3]

---

[2] AMEC is the successor in interest to Morse Diesel International, Inc., the original party to prime contract with GSA and the Subcontract with Rosh.

[3] AMEC is not seeking by this motion to dismiss Count II of Rosh's Complaint, which is Rosh's claim for remission of liquidated damages of $38,618. This is because AMEC does not dispute the $38,618 liquidated damages amount. AMEC took the $38,618 into account as part of AMEC's overall calculation of the total settlement amount due to Rosh under the GSA's settlement allocation.  AMEC proffered the due amount, including the liquidated damages, to Rosh on April 11, 2006, but Rosh rejected it.  *See* Complaint, Ex. D, Schedule A attached thereto.  If the Court determines that Rosh is bound by its Settlement and Joint Prosecution Agreements with AMEC, and is further bound by the GSA settlement allocation, then dismissal of Counts I, III and IV will result in complete resolution of this case, as AMEC will pay to Rosh the sum due to Rosh pursuant to these agreements.

This motion is based on the included Statement of Points and Authorities, the pleadings and records on file in this action, and upon such further oral and documentary evidence and argument as may be presented before or at the hearing on this matter.  Pursuant to Local Rule 7(c), a Proposed Order is submitted concurrently herewith.

Dated: July 9, 2007                              Respectfully submitted,


                                         _____/s/ Byron L. Pickard_____
                                         Barbara G. Werther (D.C. Bar No. 259879)
                                         Byron L. Pickard (D.C. Bar No. 499545)
                                         Thelen Reid Brown Raysman & Steiner LLP
                                         701 Eighth Street, N.W.
                                         Washington, D.C.  20001
                                         Telephone:  (202) 508-4000
                                         Facsimile:  (202) 508-4321

                                         Counsel for AMEC Construction
                                         Management, Inc.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROSH CONSTRUCTION, INC. | ) | |
| 103 Norman Road, Suite B | ) | |
| Pasadena, Maryland  21122 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.:  1:07-cv-00876-HHK |
| v. | ) | |
| | ) | |
| AMEC CONSTRUCTION | ) | |
| MANAGEMENT, INC. | ) | |
| 2200 Fletcher Avenue | ) | |
| Fort Lee, New Jersey  07024 | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

---

## MEMORANDUM IN SUPPORT OF
## DEFENDANT AMEC CONSTRUCTION MANAGEMENT, INC.'S
## MOTION TO DISMISS COUNTS I, III AND IV OF
## PLAINTIFF ROSH CONSTRUCTION, INC.'S COMPLAINT

---

Barbara G. Werther (D.C. Bar No. 259879)
Byron L. Pickard (D.C. Bar No. 499545)
THELEN REID BROWN RAYSMAN & STEINER LLP
701 Eighth Street, N.W.
Washington, D.C.  20001
Telephone:  (202) 508-4000
Facsimile:  (202) 508-4321

Counsel for AMEC Construction Management, Inc.

# TABLE OF CONTENTS

STATEMENT OF POINTS AND AUTHORITIES.................................................................... 1

I.    INTRODUCTION ................................................................................................................... 1

II.   PROCEDURAL HISTORY...................................................................................................... 3

    A.    The Contractual Relationship ............................................................................... 3

    B.    AMEC/Rosh Settlement Agreement and Joint Prosecution Agreement................ 3

    C.    GSA Settlement Terms Sheet and Schedule A ....................................................... 5

III.  ARGUMENT ........................................................................................................................... 7

    A.    Applicable Legal Standard...................................................................................... 7

    B.    Rosh Is Bound By The Express Terms Of The Settlement Agreements. ............... 8

        1.    Rosh admits that it entered into the AMEC/Rosh Settlement Agreement
             and the Joint Prosecution Agreement. ........................................................ 8

        2.    Rosh granted AMEC authority to settle Rosh's claims against GSA and
             AMEC did so in good faith and at arm's length; hence, Rosh is bound..... 9

        3.    Rosh presents no plausible facts to deny the fact that the GSA Agreement
             made a specific settlement allocation to Rosh in good faith and at arm's
             length....................................................................................................... 10

        4.    Rosh presents no plausible facts that AMEC, not GSA, was responsible
             for the settlement allocation................................................................... 11

        5.    AMEC's deductions for mark-up and allocation of legal fees to Rosh were
             done in accordance with the JPA and the total settlement amount due Rosh
             is $106,585.61........................................................................................ 14

        6.    Rosh's allocation calculation set forth in Count IV is incorrect, and Rosh
             is entitled to no more than $55,327.11 on its delay and acceleration claim.
             ..................................................................................................... 18

IV.   CONCLUSION........................................................................................................... 19

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bell Atlantic Corp. v. Twombly*,
   127 S. Ct. 1955 (May 21, 2007)..................................................................................7, 13, 18

*Browning v. Clinton*,
   292 F.3d 235 (D.C. Cir. 2002) ...........................................................................................7, 11

*Gustave-Schmidt v. Chao*,
   226 F. Supp. 2d 191 (D.D.C. 2002) ....................................................................................7, 8

*Hicks v. Association of American Medical Colleges*,
   2007 U.S. Dist. LEXIS 39163 (D.D.C. May 31, 2007) ........................................................7

*Khan v. Parsons Global Serv., Ltd.*,
   480 F. Supp. 2d 327 (D.D.C. 2007) .....................................................................................1

*Kyriakopoulos v. George Washington Univ.*,
   657 F. Supp. 1525 (D.D.C. 1987) .......................................................................................12

*Oppermann v. U.S.*,
   2007 U.S. Dist. LEXIS 43270 (D.D.C. June 15, 2007) ........................................................7

*Village of Kaktovik v. Watt*,
   689 F.2d 222 (D.C. Cir. 1982) .......................................................................................8, 18

*Wiggins v. Hitchens*,
   853 F. Supp. 505 (D.D.C. 1994) ..........................................................................................7

## NEW YORK STATE CASES

*Peck v. Chase Manhattan Bank*,
   190 A.D.2d 547 (N.Y. App. Div. 1993) ...............................................................................12

## STATUTES

Fed R. Civ. Proc. 12 (b)(6) ...........................................................................................................1

## STATEMENT OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

AMEC seeks to dismiss Counts I, III and IV of Rosh's Complaint because by these counts Rosh seeks to overturn and reject the express terms of two agreements executed by Rosh and AMEC that set forth how money was to be distributed to Rosh in any settlement.  AMEC properly followed the terms of these agreements in computing the sum due and payable to Rosh as a consequence of a settlement agreement between AMEC and the GSA, which specifically allocated money for Rosh.  Rosh's Complaint sets forth no factual predicate for any claim for relief plausible on its face for Counts I, III, and IV.  To the contrary, Rosh's Counts provide no facts whatsoever that countermand the express terms of the agreements binding Rosh and AMEC.   Accordingly, Counts I, III and IV of Rosh's Complaint must be dismissed for failure to state a cause of action upon which relief may be granted

An operative Settlement Agreement and Joint Prosecution Agreement, both executed by AMEC and Rosh, and a Settlement Agreement and its payment allocation entered into by the GSA and AMEC, to which Rosh is bound, govern all aspects of Rosh's claims previously submitted to AMEC for resolution and now re-asserted in Rosh's Complaint.  *See* Complaint, Exs. C and D, which comprise these respective documents.[1]  Rosh's Complaint ignores Rosh's own contractual obligations under these agreements and seeks relief to which Rosh is not entitled.  Specifically, Counts I, III and IV seek a re-calculation of GSA's settlement allocation to Rosh under the GSA/AMEC Settlement Agreement.  By the clear terms of the AMEC/Rosh Settlement Agreement and Joint Prosecution Agreement and the GSA/AMEC Settlement

---

[1] It should be noted that the final two pages of Rosh's Exhibit D are not from the GSA/AMEC Settlement Agreement, which Rosh also attaches at Exhibit D. The first of these final two pages entitled "Allocation of GSA Settlement; Punchlist Calculation"  represents AMEC's computation of the amount due and owing to Rosh on its punchlist claims, after assessment of legal fees.  AMEC has paid this sum to Rosh and there is no issue with this claim, or the legal fees allocated by AMEC either in Rosh's complaint or otherwise.  The second page of Rosh's Exhibit D is AMEC's calculation of the percentage of the GSA settlement by subcontractor claim.

Agreement, Rosh is bound to accept GSA's settlement allocation, which was calculated in good faith and at arm's length.

Despite Rosh's agreement to be bound to any settlement allocation between AMEC and GSA, Rosh's Complaint seeks to undo its prior agreements (and the GSA Settlement Agreement) and obtain a recalculation. Yet, the Settlement Agreement and Joint Prosecution Agreement between AMEC and Rosh expressly granted AMEC the right to settle Rosh's claims against GSA, so long as such settlement was made in good faith and at arm's length. Rosh's Complaint states no facts that GSA's allocation was made in bad faith or not at arm's length, that AMEC's application of mark-up and legal fees is impermissible by the parties' contracts or, most revealing, any basis in those contracts for the alternative allocation that Rosh seeks to assert in Count III and IV of its Complaint. Further, not only have all of AMEC's other subcontractors, except Rosh, accepted GSA's allocation of settlement funds, Rosh accepted the allocation for its punchlist claim. *See* Complaint, Ex. D, "Allocation of GSA Settlement; Punchlist Calculation," attached thereto. Further, contrary to its Count I, Rosh accepts the principle of a deduction of legal fees from the delay and acceleration computation, while simultaneously rejecting any deduction of legal fees on its direct cost claims. But Rosh has no basis on which to pursue its Complaint, as its claims were all resolved in a Settlement Agreement and a Joint Prosecution Agreement, voluntarily entered into by Rosh, in which Rosh agreed to accept the GSA allocation. Accordingly, AMEC respectfully requests that Counts I, III and IV be dismissed in their entirety for failure to state claims upon which relief can be granted.

## II.    PROCEDURAL HISTORY

### A.    The Contractual Relationship

On November 8, 1996, AMEC[2] entered into Contract No. No. GS-11P96MKC0015 with GSA for the renovation of the ICC/USCS/CW Buildings Modernization in Washington, D.C. (the "Project").  *See* Complaint, ¶ 6.  Subsequently, AMEC and Rosh entered into a Subcontract agreement, dated February 26, 1997, whereby Rosh agreed to provide and install door frames, doors, door hardware and other work on the Project.  *See* Complaint, ¶ 7.

As a result of GSA caused changes, delays and acceleration, AMEC and many of AMEC's subcontractors brought claims against GSA seeking additional costs and a remission of liquidated damages assessed by GSA.  *See* Complaint, ¶ 9.  Rosh submitted claims to AMEC for submission to GSA, dated March 18, 2002, which included Rosh's direct costs claims, punchlist claim, and delay and acceleration claims as well as a claim for remission of liquidated damages assessed by GSA, in the total amount of $442,586.  *See* Complaint, Ex. D, "[Percentage] of Delay & LD's," attached thereto.

### B.    AMEC/Rosh Settlement Agreement and Joint Prosecution Agreement

Subsequently, AMEC and Rosh entered into a written Settlement Agreement dated February 4, 2003, entitled "Settlement Agreement and Release" ("AMEC/Rosh Settlement Agreement").  *See* Complaint, ¶ 11, Ex. C.  Pursuant to the AMEC/Rosh Settlement Agreement, AMEC settled with Rosh all of Rosh's outstanding claims, and the parties agreed that AMEC's liability to Rosh would be limited to payments made by GSA to AMEC for Rosh's portion of its claims.[3]  *Id.*  Paragraph 2 of the AMEC/Rosh Settlement Agreement specifically states:

---

[2] AMEC is the successor in interest to Morse Diesel International, Inc., the original party to prime contract with GSA and to the subcontract with Rosh.

[3] The AMEC/Rosh Settlement Agreement also settled Rosh's claims on AMEC's Pentagon Wedge I project (the wedge of the Pentagon hit by the plane on September 11, 2001).  Only Rosh's claims against GSA related to the ICC/USCS/CW Project are the subject of the captioned dispute.

> Rosh agrees that it shall not be entitled to any additional
> compensation of any kind from AMEC and shall look exclusively
> to the GSA on the ICC Project for any additional funds.  To the
> extent GSA makes payment to AMEC on behalf of Rosh on the
> ICC Project, AMEC shall make such payments to Rosh in
> accordance with Exhibit A.

*See* Complaint, Ex. C, ¶ 2.

Attached as Exhibit A to the AMEC/Rosh Settlement Agreement is a second written

agreement between AMEC and Rosh entitled "Joint Prosecution and Close Out Agreement"

("JPA").  *See* Complaint, Ex. C, Ex. A attached thereto.  In the JPA, Rosh granted to AMEC the

express written authority to settle Rosh's claims with GSA, relating to the ICC Project, on

Rosh's behalf.  *See id.* at ¶ 2.  Paragraph 2 states, in relevant part:

> AMEC and [Rosh] agree that AMEC shall assist [Rosh] in
> presenting to GSA [Rosh's] claims as set forth in 1b, above, and
> will use all reasonable efforts to achieve a settlement of [Rosh's]
> claims through negotiations with the GSA.

*See* Complaint, Ex. C., Ex. A attached thereto, ¶ 2.  JPA Paragraph 4 states:

> If a negotiated settlement cannot be reached with GSA, and an
> appeal, law suit or other proceeding with regard to [Rosh's] claims
> against the [GSA] is instituted by AMEC, [Rosh] agrees that
> counsel for AMEC will have ultimate control of the conduct of the
> matter and further agrees, at [Rosh's] cost and expense, to furnish
> to such counsel any and all documents in support of [Rosh's]
> claims and to make available any and all witnesses deemed
> necessary by AMEC.  AMEC will bear the cost of the lead legal
> team initially, however, [Rosh] agrees that AMEC will be
> reimbursed for [Rosh's] pro rata share for such cost out of any
> recovery obtained from GSA on [Rosh's] behalf.  [Rosh's] pro rata
> share of attorneys' fees will be determined by dividing [Rosh's]
> claim by the total claim times the attorneys' fees.

*See* Complaint, Ex. C, Ex. A attached thereto, ¶ 4.  Paragraph 6 of the JPA states, in relevant

part:

> So long as AMEC acts in accordance with this Agreement and in
> good faith with respect to presenting [Rosh's] claims and with

> respect to allocation of monies paid to [Rosh], the final amounts
> allocated to [Rosh] shall be binding on [Rosh].

*See* Complaint, Ex. C, Ex. A attached thereto, ¶ 6.

In the JPA, Rosh further agreed that AMEC shall have no liability whatsoever for any of [Rosh's] claims at any time, other than to make payment in accordance with the terms of this Agreement. *See* Complaint, Ex. C, Ex. A attached thereto, ¶ 1b. Based on this agreement, Rosh agreed that its right to recovery on any of its claims would be limited to that amount which was recovered by AMEC from GSA based directly on Rosh's claims, less AMEC's mark-up. *See id.* at ¶ 6. AMEC's mark-up amounts to 10% profit and 2.32% overhead. *See* Complaint, Ex. D, "Allocation of GSA Settlement; Punchlist Calculation," attached thereto. Rosh also agreed to reimburse AMEC for Rosh's pro rata share of attorneys' fees incurred by AMEC, on Rosh's behalf, out of any recovery obtained from GSA on the ICC Project. *See id.* at ¶ 4. The JPA provides a formula for calculating the direct costs for attorneys' fees that would be allocable to Rosh. *See id.* Finally, Rosh agreed that:

> ***So long as AMEC acts in accordance with this Agreement and in
> good faith*** with respect to presenting [Rosh's] claims and with
> respect to allocation of monies paid to [Rosh], ***the final amounts
> allocated to [Rosh] shall be binding on [Rosh]***.

*See* Complaint, Ex. C, Ex. A attached thereto, ¶ 6 (emphasis added).

### C.    GSA Settlement Terms Sheet and Schedule A

AMEC submitted an Omnibus Claim to GSA's Contracting Officer on behalf of itself and its subcontractors on October 24, 2002, for, *inter alia*, delays and acceleration, in the amount of $19,342,120 million. Included in the Omnibus Claim was a delay and acceleration claim for $10,903,193, and claim for remission of liquidated damages held by GSA in the amount of $2,389,572 million (totaling $13,292,765). The Contracting Officer denied AMEC's Omnibus Claim in toto. AMEC appealed the Contracting Officer's denial of the claim at the General

Services Board of Contract Appeals, as required by the Contract Disputes Act. As such,

Paragraph 4 of the JPA became applicable. After extensive document and deposition discovery

in this lawsuit, AMEC and its subcontractors, including Rosh, agreed to attempt mediation with

the GSA to resolve their dispute.[4] The parties appointed as the mediator GSBCA Judge Martha

DeGraff. AMEC, its subcontractors, including Rosh, and GSA, then held mediation sessions

conducted at arm's length and in good faith with Judge DeGraff. *See* Complaint, Ex. D, ¶ 3.[5] On

March 31, 2006, GSA and AMEC entered into a written settlement agreement on the delay and

acceleration claim, titled "Settlement Terms Sheet," ("GSA Settlement Terms Sheet"). *See*

Complaint, Ex. D. Under this settlement, GSA agreed to pay AMEC $6,700,000 in full and final

resolution of AMEC's and its subcontractors delay and acceleration claims on the Project, and

including remission of liquidated damages in the amount of $2,389,572 that was held by GSA

(the "Settlement Amount"). *See* Complaint, Ex. D, ¶ 4.

Of the Settlement Amount, GSA apportioned $2,115,708 for payment to the

subcontractors, including Rosh, on their respective delay and acceleration claims. *See*

Complaint, Ex. D, ¶ 5, which specifically states:

> "Of this Settlement Amount, GSA apportions ($2,115,708) on the
> delay and acceleration claim as set forth in Schedule A."

GSA's allocations to the subcontractors, including Rosh, are set forth in Schedule A,

attached to the GSA's Settlement Terms Sheet. *See* Complaint, Ex. D, Schedule A, attached

thereto. By Schedule A, GSA, allocated $109,071 specifically to Rosh for its delay and

---

[4] The direct cost claims and punchlist claims of AMEC and its subcontractors were mediated and resolved separately from the mediation process with Judge DeGraff. The punchlist claim, for example, was the subject of a separate mediation in August 2005 before Armed Services Board of Contract Appeals Judge Cheryl Rome. Rosh, again, attended and participated in that mediation and accepted that settlement, inclusive of AMEC's mark-up (it was agreed in that case that AMEC would waive the mark-up) and legal fees allocation. Rosh received $86,397.59 in this settlement. *See* Complaint, Ex. D, "Allocation of GSA Settlement; Punchlist Calculation," attached thereto.
[5] The formal mediations took place on December 21 and 22, 2005, March 16, 2006 and March 31, 2006, with the assistance and participation of The Honorable Martha DeGraff, as mediator. *See* Complaint, Ex. D, ¶ 1.

acceleration claim, exclusive of AMEC's mark-up and legal fees incurred by AMEC on Rosh's behalf and allocated in good faith.  *See* Complaint, Ex. D, Schedule A attached thereto; *see also* Complaint, Ex. C, Ex. A, attached thereto, ¶¶ 4 and 6.  Based on the GSA's allocation, AMEC calculated an amount due Rosh, taking into account remission of liquidated damages, and attorneys' fees and costs incurred on behalf of Rosh.  To date, Rosh has refused to accept payment of its total amount due, $106,585.  All other subcontractors have accepted the allocation.

## III.    ARGUMENT

### A.    <u>Applicable Legal Standard</u>

As the Supreme Court recently held in *Bell Atlantic Corp. v. Twombly*, a complaint must present "enough facts to state a claim to relief that is plausible on its face," and "above the speculative level."  *See Hicks v. Ass'n of American Medical Colleges*, 2007 U.S. Dist. LEXIS 39163 (D.D.C. May 31, 2007) (*quoting Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (May 21, 2007); *see also Oppermann v. U.S.*, 2007 U.S. Dist. LEXIS 43270 (D.D.C. June 15, 2007).  The allegations in a plaintiff's complaint are presumed true at this stage, and all reasonable factual inferences must be construed in the plaintiff's favor.  *See id.*  But, the Court need not accept as true inferences or bare statements unsupported by facts set out in the complaint or legal conclusions cast as factual allegations.  *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  Legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness.  *See Wiggins v. Hitchens*, 853 F. Supp. 505, 509 (D.D.C. 1994).  In deciding a 12(b)(6) motion, the Court may consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice."  *See Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).

B.    **Rosh Is Bound By The Express Terms Of The Settlement Agreements.**

Counts I, III, and IV of Rosh's Complaint disputing the allocation made to Rosh in the

GSA Settlement, all fail to make plausible claims for relief.  As set forth in greater detail below,

under the express terms of the AMEC/Rosh Settlement Agreement, the JPA, the GSA Settlement

Terms Sheet and the attached Schedule A (referred to collectively as the "Settlement

Agreements"), Rosh is bound to GSA's allocation for Rosh's claims.  All of the Settlement

Agreements are attached to Rosh's Complaint, and thus, properly considered in conjunction with

this 12(b)(6) motion to dismiss.  *See* Complaint, Exs. C and D; *see also Gustave-Schmidt*, 226 F.

Supp. 2d at 196.  Even viewed in the light most favorable to Rosh, Counts I, III and IV are

nothing more than Rosh's attempt to circumvent the express terms of the Settlement Agreements,

to which Rosh is bound.  Accordingly, as shown below, Counts I, III and IV fail to state claims

upon which relief can be granted and should be dismissed.

### 1.    Rosh admits that it entered into the AMEC/Rosh Settlement Agreement and the Joint Prosecution Agreement.

Rosh's Complaint does not deny, or even seek to reinterpret, the express terms of the

Settlement Agreements it executed with AMEC.  An agreement to settle a legal dispute is a

contract.  *See Village of Kaktovik v. Watt*, 689 F.2d 222, 230 (D.C. Cir. 1982).  In the Complaint,

Rosh expressly admits that, "By written agreement dated February 4, 2003, entitled 'Settlement

Agreement and Release' (Exhibit C hereto), AMEC…***settled with Rosh all of Rosh's***

***outstanding claims*.**"  *See* Complaint, ¶ 11; *see also* Complaint, Ex. C, ¶ 4 and Ex. A, attached

thereto, ¶ e (emphasis added).  In so doing, AMEC and Rosh each agreed to extinguish those

legal rights it sought to enforce through litigation in exchange for those rights secured by the

settlement contract.  *See Watt*, 689 F.2d at 230.  Rosh settled all claims against AMEC, arising

out of the Project, in exchange for AMEC's agreement to pursue resolution of Rosh's claims

against GSA, on Rosh's behalf.  The parties further agreed that AMEC's liability to Rosh

thereafter was limited to payments made by GSA to AMEC for Rosh's portion of its claims.  *See*

Complaint, ¶ 11, Ex. C, ¶ 1.  As such, Rosh is contractually bound by the terms set forth in both

the AMEC/Rosh Settlement Agreement and the JPA and to the allocation made by GSA to Rosh

in the GSA settlement agreement

> **2.    Rosh granted AMEC authority to settle Rosh's claims against GSA
> and AMEC did so in good faith and at arm's length; hence, Rosh is
> bound.**

Under the JPA, AMEC indisputably possessed the written authority to settle Rosh's

claims against GSA, on Rosh's behalf, and AMEC's express settlement authority is

memorialized in JPA Paragraph 2.  Paragraph 2 states, in relevant part:

> AMEC and [Rosh] agree that AMEC shall assist [Rosh] in
> presenting to GSA [Rosh's] claims as set forth in 1b, above, and
> will use all reasonable efforts to achieve a settlement of [Rosh's]
> claims through negotiations with the GSA.

*See* Complaint, Ex. C. Ex. A attached thereto, ¶ 2.  JPA Paragraph 4 states:

> If a negotiated settlement cannot be reached with GSA, and an
> appeal, law suit or other proceeding with regard to [Rosh's] claims
> against the [GSA] is instituted by AMEC, [Rosh] agrees that
> counsel for AMEC will have ultimate control of the conduct of the
> matter and further agrees, at [Rosh's] cost and expense, to furnish
> to such counsel any and all documents in support of [Rosh's]
> claims and to make available any and all witnesses deemed
> necessary by AMEC.  AMEC will bear the cost of the lead legal
> team initially, however, [Rosh] agrees that AMEC will be
> reimbursed for [Rosh's] pro rata share for such cost out of any
> recovery obtained from GSA on [Rosh's] behalf.  [Rosh's] pro rata
> share of attorneys' fees will be determined by dividing [Rosh's]
> claim by the total claim times the attorneys' fees.

*See* Complaint, Ex. C, Ex. A attached thereto, ¶ 4.  Paragraph 6 of the JPA states, in relevant

part:

> So long as AMEC acts in accordance with this Agreement and in
> good faith with respect to presenting [Rosh's] claims and with

9

> respect to allocation of monies paid to [Rosh], the final amounts
> allocated to [Rosh] shall be binding on [Rosh].

*See* Complaint, Ex. C, Ex. A attached thereto, ¶ 6.

After extensive discovery (written and deposition), and on the eve of a six week trial

scheduled at the GSBCA, all claims related to the Project were formally mediated before The

Honorable Martha DeGraff, between GSA and AMEC, with the participation of the

subcontractors, including Rosh. *See* Complaint, Ex. D, ¶ 1. In accordance with AMEC's

settlement authority under JPA Paragraphs 2, 4 and 6, on March 31, 2006, AMEC entered into a

Settlement Agreement with GSA, via the GSA Settlement Terms Sheet and the attached

Schedule A, setting forth GSA's allocation of payments to the subcontractors on their respective

delay and acceleration claims. *See* Complaint, ¶ 19, Ex. D, Schedule A, attached thereto. As set

forth in the GSA Settlement Terms Sheet, all disputes on the Project, including Rosh's claims,

were finally resolved, with one exception, irrelevant to this motion.[6]

### 3.      Rosh presents no plausible facts to deny the fact that the GSA Agreement made a specific settlement allocation to Rosh in good faith and at arm's length.

On Rosh's delay and acceleration claim, GSA's Schedule A to the Settlement Term Sheet

allocates to Rosh an amount of $109,071, exclusive of AMEC's mark-up and Rosh's allocable

share of AMEC's legal fees. *See* Complaint, ¶ 19, Ex. D, Schedule A attached thereto. Rosh is

contractually bound to accept the terms of the Schedule A allocation so long as AMEC acted in

accordance with the JPA and in good faith in the presentation of Rosh's claims and with respect

to the allocation. Specifically, JPA Paragraph 6 states, in relevant part:

---

[6] This single exception to the settlement of all disputes related to this Project, was AMEC's claim involving CE 435, the subject matter of which is irrelevant to the instant action. *See* Complaint, Ex. D, ¶ 4. CE 435, which has nothing to do with the delay and acceleration claims or the remission of liquidated damages claims, was litigated in a separate action before the General Services Administration Board of Contract Appeals on May 9-12, 2006. *See id.*

> ***So long as AMEC acts in accordance with this Agreement and in
> good faith*** with respect to presenting [Rosh's] claims and with
> respect to allocation of monies paid to [Rosh], ***the final amounts
> allocated to [Rosh] shall be binding on [Rosh]***.

*See* Complaint, Ex. C, Ex. A attached thereto, ¶ 6 (emphasis added).  AMEC did so act.

Paragraph 3 of the GSA Settlement Terms Sheet expressly states:

> ***Both the mediations and the informal settlement discussions
> have been conducted at arm's length and in good faith***.

*See* Complaint, Ex. D, ¶ 3 (emphasis added).  These agreements, submitted to the Court by Rosh,

clearly support a finding that AMEC acted in good faith with respect to resolving Rosh's claims

and in agreeing to GSA's Schedule A allocation on Rosh's – and every other subcontractor's –

behalf.  Rosh offers no facts contradicting the direct language of this agreement.  Accordingly,

the $109,071 allocation to Rosh for delay and acceleration, exclusive of AMEC's mark-up and

legal fees, is binding on Rosh.  *See* Complaint, Ex. C, Ex. A attached thereto, ¶ 6.  Accordingly,

on any basis, the $109,071 is the absolute maximum to which Rosh would be entitled on its

delay and acceleration claims as made in Counts III and IV.

> ### 4.    Rosh presents no plausible facts that AMEC, not GSA, was responsible for the settlement allocation.

In order to make its claims, Rosh, by definition, must assert that AMEC, not GSA, made

the settlement allocation to Rosh.  But other than stating this, as it must, Rosh presents no facts at

all supporting its bare statement.  In Counts III and IV, Rosh alleges that AMEC (not GSA) was

responsible for the Schedule A allocation, quibbles with the allocation and incorrectly, and

without more, states that, "The amount AMEC allocated to Rosh, based on a percentage

approved by GSA auditors of other subcontractors' claims, was arbitrary, capricious, and in bad

faith."  *See* Complaint, ¶¶ 23-27 and 31-33.  Rosh's assertions are unsupported by any facts.

They are nothing more than improper Ipsit Dixit pleading.  *See Browning v. Clinton*, 292 F.3d at

242 (the Court need not accept as true inferences unsupported by facts set out in the complaint or

legal conclusions cast as factual allegations).  And, they are remarkable for this, as Rosh attended

and participated in the mediations with GSA before Judge DeGraff.  Contrary to Rosh's

assertions, the GSA Settlement Terms Sheet gives express credit for the Schedule A allocation <u>to

GSA</u>, stating:

> Of the Settlement Amount, ***GSA apportions*** ($2,115,708) on the
> delay and acceleration claim as set forth in Schedule A.

*See* Complaint, ¶ 19, Ex. D, ¶ 5 (emphasis added).  Rosh ignores that language.  Therefore,

Rosh's allegation that AMEC is responsible for the allocation is unsupported by any facts.  Rosh

offers not one scintilla of plausible fact to support its assertion that AMEC made the allocation.

Rosh's Complaint offers no prima facie plausible facts that GSA's counsel executed this

agreement with this language by mistake or under some other incapacity.  Indeed, Rosh pleads

no such thing.  It merely states that AMEC made the allocation,  contrary of this express

language of the Agreement.  This ipsit dixit does not create a prima facie plausible cause of

action for bad faith.  Moreover, a cause of action in bad faith impugns reputation.  Rosh's

Complaint impugns AMEC's reputation with the subcontracting community.[7]  Yet Rosh does so

without relying on any facts, comprising the bad faith, to support its assertion.  On this basis

alone, Rosh's claim for bad faith for Counts I, III and IV, should be dismissed.

---

[7] This court should note that where allegations of bad faith may adversely effect a defendant's reputation in the community, it has been held that plaintiffs must plead bad faith with particularity.  See *Kyriakopoulos v. George Washington Univ.*, 657 F. Supp. 1525, 1529 (D.D.C. 1987) (noting that "plaintiff's allegations of bad faith and evil motive may fairly be described as the functional equivalent...of a fraud claim which must be pleaded with particularity.").  Courts in other jurisdictions have held likewise.  *See, e.g, Peck v. Chase Manhattan Bank, N.A.*, 190 A.D.2d 547 (N.Y. App. Div. 1993) (holding that a cause of action for commercial bad faith requires allegations of a scheme or acts of wrongdoing, together with allegations of actual knowledge of the scheme or wrongdoing that amounts to bad faith or allegations of complicity in alleged confederation with the wrongdoers.). Rosh's complaint provides nothing approaching the details of fact required to plausibly state this claim.  Notably, pursuant to the AMEC/Rosh Settlement Agreement, Rosh agreed that it would not make, or cause to be made, disparaging comments regarding AMEC's performance of its obligations under the Subcontract and the Project.  See Complaint, Ex. C, ¶ 5.

By the JPA, AMEC was only bound to allocate the settlement in the event that no such allocation existed as part of the settlement with GSA. *See* Complaint, Ex. C, Ex. A attached thereto, ¶ 6 (stating, in relevant part, "In the event that any settlement, judgment or award is in a form such that the amount attributable directly to Subcontractor's claims cannot be readily determined, AMEC may in good faith allocate such settlement"). That was not the case here, as evidenced by GSA's Schedule A allocation in the AMEC/GSA settlement agreement. Otherwise, where an allocation was made, AMEC was simply to apply the allocation in accordance with the agreements. *See* Complaint, Ex. C., Ex. A attached thereto, ¶¶ 1b and 6.

Even if Rosh's assertion that AMEC performed the allocation is taken to be true, this does not change the fact that the settlement process between AMEC, GSA and the subcontractors was conducted in good faith and at arm's length, as set forth above, and as specifically acknowledged in the GSA/AMEC settlement agreement. *See* Complaint, Ex. D, ¶ 3 (emphasis added). Again, Rosh offers not one scintilla of fact to challenge the language of the settlement agreement with GSA. Pursuant to *Bell Atlantic*, Rosh's complaint fails to present "enough facts to state a claim to relief that is plausible on its face" as to AMEC making an allocation under the GSA settlement and that this agreement was not made at arm's length.

In short, there are simply no facts pleaded by Rosh to make a plausible case that AMEC committed breach of contract, much less a breach of its duty of good faith. *See* Complaint, ¶ 33. To the contrary, the facts accompanying Rosh's Complaint, comprising the GSA/AMEC settlement agreement expressly state the exact opposite. And, Rosh cites no facts that plausibly rebut these factual statements. Therefore, pursuant to the JPA, the $109,071 allocation to Rosh for delay and acceleration, exclusive of AMEC's mark-up and legal fees, is binding on Rosh as the maximum to which is could possibly be entitled under the settlement agreement with GSA.

*See* Complaint, Ex. C, Ex. A attached thereto, ¶ 6.  Accordingly, Counts III and IV, alleging that

AMEC improperly allocated the delay and acceleration settlement amount, are unsupported by

the facts, and therefore, implausible.  Counts III and IV should be dismissed.

> **5.    AMEC's deductions for mark-up and allocation of legal fees to Rosh were done in accordance with the JPA and the total settlement amount due Rosh is $106,585.61.**

Paragraph 2 of the AMEC/Rosh Settlement Agreement states that, "To the extent GSA

makes payment to AMEC on behalf of Rosh on the ICC Project, ***AMEC shall make such***

***payments in accordance with [the JPA]***.  *See* Complaint, Ex. C, ¶ 2 (emphasis added).  The JPA

expressly provides that:

> [Rosh's] right to recovery on any claims it may have with respect
> to the Project is limited to that amount which is recovered by
> AMEC from GSA based directly on [Rosh's] claims, less AMEC's
> mark-up and the amount reimbursed to AMEC in accordance with
> Paragraph 4 above.

*See* Complaint, Ex. C, Ex. A attached thereto, ¶ 6.  The agreed upon formula for calculating legal

fees owed by Rosh to AMEC is set out in JPA Paragraph 4:

> [Rosh] agrees that AMEC will be reimbursed for [Rosh's] pro rata
> share for such cost out of any recovery obtained from GSA on
> [Rosh's] behalf.  [Rosh's] pro rata share of attorneys' fees will be
> determined by dividing [Rosh's] claim by the total claim times the
> attorneys' fees.

*See* Complaint, Ex. C, Ex. A attached thereto, ¶ 4.  This payment formula was contractually

agreed to by the parties, and must be applied to Rosh's delay and acceleration claims.  In

applying the payment formula to Rosh's delay and acceleration claim, one begins with the

GSA's allocation of $109,071.  *See* Complaint, Ex. D, Schedule A, attached thereto.  From this,

one then deducts AMEC's mark-up.  *See* Complaint, Ex. C., Ex. A, attached thereto, ¶ 6).  This

amounts to 12.32%.  *See* Complaint, Ex. D, "Allocation of GSA Settlement; Punchlist

Calculation," attached thereto.[8]  Doing this calculation, leads to the following:

**$109,071 (GSA Allocation) – 12.32% (2.32% overhead + 10% profit) = $95,633.45.**

Thus, even without any deduction for legal fees, the maximum Rosh might possibly claim is

$95,633.45, not the $97,183 claimed in Count III or the $275,706 in Count IV.

From there, and pursuant to JPA Paragraphs 4 and 6, AMEC's direct costs for legal fees

incurred in pursuit of Rosh's claims must be deducted.  Using the contractual formula, it is first

necessary to calculate Rosh's delay and acceleration claim, including LDs.  This amounts to

$442,586.  *See* Complaint, Ex. D, "[Percentage] of Delay & LD's," attached thereto.  The "total

claim" for delay and acceleration is $13,292,765.  *See id.*  As such, doing the math this amounts

to:

**$442,586 (Rosh's total delay and acceleration claim amount)     = 0.033295254**
**$13,292,765 (Total amount of all delay and acceleration claims)   (*i.e.*, 3.3% of the claim)**

(*See* the document attached to Rosh's Complaint, Exhibit D, entitled "[Percentage] of Delay &

LD's."[9]  Based on the formula set forth in JPA Paragraph 4, Rosh's 3.3% pro rata percentage of

the delay and acceleration claims must then be multiplied by AMEC's attorneys' fees in pursuit

of all delay and acceleration claims.

For reasons intentional or otherwise, Rosh has not attached to its Complaint the AMEC

computation of legal fees sent to Rosh on September 21, 2006.[10]  As such, it is not possible for

---

[8] AMEC's percentages for mark-up are included in an AMEC document attached to Ex. D of Rosh's Complaint. *See* Complaint, Ex. D, "Apportionment of GSA Settlement:  Punchlist Calculation."  This document lists AMEC's applicable mark-up rates at 2.32% for  overhead and 10% for profit.  *See id.*

[9]  This document was created by AMEC and takes into account AMEC's and all of the subcontractors' delay and acceleration claims and determines the pro rata percentage of each claim relative to the total claims.  This document demonstrates that Rosh's claim represents 3.3% of the total delay and acceleration claims.).

[10] To dismiss this case, however, the Court need not consider these attorneys' fees, because any dispute Rosh has with these fees is not the basis of its present case.  Rosh is not complaining about AMEC's incurring $1,221,404.30

AMEC to inform the Court of the full result of the calculation under JPA Paragraphs 4 and 6 and remain strictly within the bounds of Rule 12(b).  For information purposes only, however, the Court should know that the legal fees expended by AMEC on delay and acceleration claims total $1,221,404.30 for the delay and acceleration claim, as per AMEC's letter to Rosh dated September 21, 2006.  Applying the contractual formula, Rosh is responsible for $40,306.34 of AMEC's legal fees on the delay and acceleration claim:

**$1,221,404.30 (Total legal fees) x 3.3% (Rosh's pro rata share of claim) = $40,306.34**

Finally, Rosh's pro rata share of the attorneys' fees must be deducted from the GSA allocation for Rosh's delay and acceleration claim to determine Rosh's maximum recoverable amount for delay and acceleration pursuant to the Settlement Agreements:

**$109,071 (GSA Allocation) – 12.32% (2.32% overhead + 10% profit) - $40,306.34 (Rosh's pro rata share of legal fees) = $55,327.11**

Accordingly, with respect to Counts III and IV, Rosh may recover no more than $55,327.11 for its delay and acceleration claim.  AMEC accepts that it owes Rosh this sum.

In Count I, Rosh challenges AMEC's allocation of $21,084 in attorneys' fees to Rosh for direct legal costs incurred by AMEC in pursuing Rosh's "direct" claims against GSA.  It is Rosh's position that it does not have to pay any legal fees for the direct cost claims.  This is because the $21,084 represents all of the legal fees allocated to Rosh for direct costs claims.  On any basis, Rosh's position is contrary to JPA Paragraphs 4 and 6, and does not set forth plausible facts upon which a complaint can be sustained.  *See* Complaint, ¶¶ 14-17.  AMEC admits that there was a miscalculation in the amount of the legal fees for the direct costs attributable to Rosh, totaling $12,640.50.  As such, AMEC acknowledges that this sum is owed to Rosh.  However,

---

in legal fees in pursuing the $13,292,765 delay and acceleration claim over a period of two years.  Rosh is complaining in Counts III and IV that the allocation methodology itself is incorrect.

regardless of this admission, in its Count I Rosh seeks to disregard completely the formula set forth in JPA Paragraphs 4 and 6, which expressly entitles AMEC to legal fees. Rosh offers no plausible factual basis for its position on Count I.

Rosh's position is further contradicted by Rosh's acceptance of AMEC's legal costs incurred for Rosh's direct cost claim related to Punchlist work and more significantly by its acceptance of AMEC's entitlement to legal fees and costs from the settlement amount for delay and acceleration. *See* Complaint, Ex. D, "Allocation of GSA Settlement; Punchlist Calculation," attached thereto; see also Complaint, ¶ 23 (stating "then to deduct AMEC's attorneys' fees and expenses.").[11] Rosh makes no complaint about these deductions in its Complaint, while contradictorily and simultaneously contesting any deduction of legal fees under Count I. These facts and documents demonstrate AMEC's proper entitlement to deduct attorneys' fees under the attorneys' fees formula of the AMEC/Rosh agreements to the GSA's allocated settlement amounts on the subcontractors' respective claims for payment.[12] Looking specifically at Rosh, this document at Complaint, Exhibit D shows that Rosh submitted a claim for $149,976, and the claim was settled with GSA for $93,114.60. This document further shows that AMEC's direct costs for attorneys' fees attributable to Rosh, for its Punchlist work claim, totaled $6,717. AMEC deducted its direct costs for attorneys' fees from Rosh's settlement amount, for a total amount of $86,397.59 due Rosh for its Punchlist work claim. Rosh accepted this allocation of costs and settlement amount. Accordingly, pursuant to JPA Paragraph 4 and 6, Rosh is bound to accept responsibility for AMEC's direct costs for legal fees incurred on Rosh's behalf for its direct cost claims against GSA. In the Complaint, Rosh offers no plausible factual evidence to

---

[11] The Punchlist claims asserted by AMEC and the subcontractors, including Rosh, were resolved as part of the direct cost claims. The Punchlist claims were settled in a mediation in August 2005. In settling its claim, Rosh accepted a $6,717 deduction for AMEC's legal costs as evidenced by a document attached to Rosh's Complaint, Ex. D, entitled "Apportionment of GSA Settlement; Punchlist Calculation."

[12] "Punchlist work" refers to the work remaining to be done on the Project prior to final completion.

support its claim that Rosh is not responsible for AMEC's attorneys' fees incurred while

pursuing Rosh's direct cost claims against GSA.  As such, Rosh's Count I should be dismissed.

> **6.      Rosh's allocation calculation set forth in Count IV is incorrect, and Rosh is entitled to no more than $55,327.11 on its delay and acceleration claim.**

Furthermore, Rosh provides no plausible evidence to support its claims for more than

$55,327.11 on Rosh's delay and acceleration claims.  In Count IV, Rosh asserts that it is entitled

to an allocation based upon:

> The total recovered can be determined by taking the total
> settlement ($6,700,000) and deducting the Liquidated Damages
> remission ($2,389,572) and the amount due to other subcontractors
> ($2,006,637,) leaving a net of $2,303,791.  This net amount should
> then be divided according to the proportionate share of the
> combined AMEC/Rosh claims.  Since Rosh's claim is 12.48% of
> the total of both parties' claims, Rosh's proper share of the
> settlement is $287,594, less $11,888 in legal fees, for a net amount
> due from AMEC to Rosh of $275,706.

*See* Complaint, ¶ 34.

Rosh, however, sets forth no facts that support this allocation under the AMEC/Rosh

contracts.  The allocation Rosh presents is quite simply an interpretation unsupported by any

facts or by the contractual documents.  As such, Rosh fails to present "enough facts to state a

claim to relief that is plausible on its face," and "above the speculative level," and Counts I, III

and IV warrant dismissal.  *Bell Atlantic*, 127 S. Ct. 1955.  Rosh is bound by the clear terms of the

AMEC/GSA Settlement Agreement, the JPA and the GSA Settlement to accept GSA's allocation

and AMEC's deductions for mark-up and legal fees.  *See Watt*, 689 F.2d at 230 (Each party to a

settlement agrees to extinguish those legal rights it sought to enforce through litigation in

exchange for those rights secured by the settlement contract); *see also* Complaint, Exs. C and D.

Nowhere do these documents elucidate a payment methodology as asserted by Rosh.  And, Rosh

offers no other factual predicate for its random computation, which is solely a "what we would

have wished for" complaint.  Such does not form any predicate for a complaint in contract or in

bad faith.  Without any supporting facts, Rosh's Complaint on Counts III and IV must be

dismissed.

## IV.    CONCLUSION

For the reasons set forth above, Defendant AMEC Construction Management, Inc.

respectfully requests that the Court dismiss Counts I, III and IV of Plaintiff ROSH Construction,

Inc.'s Complaint.

Dated: July 9, 2007                                    Respectfully submitted,


_____/s/ Byron L. Pickard_____
Barbara G. Werther (D.C. Bar No. 259879)
Byron L. Pickard (D.C. Bar No. 499545)
Thelen Reid Brown Raysman & Steiner LLP
701 Eighth Street, N.W.
Washington, D.C.  20001
Telephone:  (202) 508-4000
Facsimile:  (202) 508-4321

Counsel for AMEC Construction
Management, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROSH CONSTRUCTION, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.:  1:07-cv-00876-HHK |
| v. | ) | |
| | ) | |
| AMEC CONSTRUCTION | ) | |
| MANAGEMENT, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## <u>PROPOSED ORDER</u>

UPON CONSIDERATION of Defendant AMEC Construction Management, Inc.'s

Motion to Dismiss Counts I, III and IV of Plaintiff Rosh Construction, Inc.'s Complaint, it is this

_____ day of _____, 2007;

ORDERED, that Defendant AMEC Construction Management, Inc.'s Motion to Dismiss

Counts I, III and IV of Plaintiff Rosh Construction, Inc.'s Complaint is and shall be GRANTED.


Dated: _____, 2007



_____
Judge Henry H. Kennedy, Jr.
United States District Court for the
District of Columbia

Copies to:

Philip C. Jones, Esq.
Michael J. Schrier, Esq.
BELL, BOYD & LLOYD, LLP
1615 L Street, N.W., Suite 1200
Washington, D.C. 20036-5610

and

Barbara G. Werther (D.C. Bar No. 259879)
Byron L. Pickard (D.C. Bar No. 499545)
Thelen Reid Brown Raysman & Steiner LLP
701 Eighth Street, N.W.
Washington, D.C.  20001